[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15055
Non-Argument Calendar
_____

D.C. Docket No. 4:05-cr-00020-MP-WCS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAMAR SINTEL PRINGLE,

Defendant - Appellant.

_____

No. 13-15056
Non-Argument Calendar
_____

D.C. Docket No.  4:06-cr-00013-MP-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LAMAR SINTEL PRINGLE,

Defendant - Appellant.

_____

No. 13-15101
Non-Argument Calendar
_____

D.C. Docket No.  1:12-cr-00018-MP-GRJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAMAR SINTEL PRINGLE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(July 2, 2014)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

2

Lamar Sintel Pringle appeals his sentence of 87 months of imprisonment after pleading guilty to one count of health care fraud and one count of conspiracy to defraud a health care benefit program.  In his previous appeal, we vacated Pringle's sentence and remanded for a new sentencing hearing where the government could present evidence regarding Pringle's role in the offense.  United States v. Pringle, 525 F. App'x 927 (11th Cir. 2013) (per curiam).  After being resentenced, Pringle now challenges the district court's application of a two-level role enhancement under United States Sentencing Guidelines (USSG) § 3B1.1(c).  He also argues that the district court did not consider evidence of his post-sentencing rehabilitation before imposing the sentence.  After careful review, we affirm.

## I.

On April 24, 2012, a grand jury in the Northern District of Florida indicted Pringle, charging him with conspiracy to defraud a health care benefit program (Count 1) and two counts of health care fraud (Counts 2 and 3).  Several months later, Pringle pleaded guilty to Counts 1 and 3 of the indictment pursuant to a written plea agreement.

The Probation Office prepared a Presentence Investigation Report (PSR), which summarized Pringle's criminal conduct.  According to this report, Pringle participated in a scheme to defraud the Department of Labor's Office of Worker's

Compensation (OWC) by creating fake medical service providers that billed the OWC for services that were never rendered to patients. Payments from the OWC were deposited in 11 bank accounts at 5 different banks. The money was then transferred to other accounts before being withdrawn in the form of checks, ATM withdrawals, and point of sale purchases.

At his resentencing, the government called Agent Robert Torelli, who had interviewed Pringle's codefendant, Raymond Alexander, about his role in the offense. Alexander told Agent Torelli that Pringle had recruited him by promising a scheme that would allow both of them to make some money. After Alexander agreed, the two of them went to a bank to set up an account in Alexander's name. From that point onward, whenever money was deposited into Alexander's account, Pringle would instruct Alexander to withdraw a specific sum of money that would be shared between the two of them.

Alexander claimed that Pringle showed him how to withdraw the money from his account by giving him sample withdrawal slips that he could copy. Later on, Pringle also gave Alexander a debit card so he could withdraw cash from ATMs. Throughout the course of the conspiracy, Alexander stated that he would make withdrawals before meeting with Pringle to give him a portion of the proceeds. On occasion, Pringle would also call Alexander and instruct him to withdraw a sum of money to keep for himself. Alexander emphasized, however,

4

that he never opened any accounts on his own or transferred money from one bank account to another. In fact, he claimed that he did not even know how to do any of these things. Based on this testimony and the other evidence in the record, the district court concluded that Pringle served as an organizer, leader, manager, or supervisor of the conspiracy. After applying a two-level enhancement on this basis and hearing from Pringle about his post-sentencing rehabilitation, the district court sentenced Pringle to 87 months of imprisonment.

## II.

We first consider Pringle's argument that his two-level role enhancement was improper because the government failed to present sufficient and reliable evidence demonstrating that he directed at least one of his codefendants. Pringle complains that the government largely relied on hearsay because Agent Torelli simply repeated statements made by Alexander, and even Agent Torelli had no way of knowing whether this information was truthful.

We review a district court's determination that a defendant was a leader or organizer for clear error. United States v. Ramirez, 426 F.3d 1344, 1355 (11th Cir. 2005) (per curiam). To qualify for a role enhancement under § 3B1.1, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. United States v. Williams, 527 F.3d 1235, 1248 (11th Cir. 2008). In evaluating whether this enhancement applies, the district court should

consider: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. Ramirez, 426 F.3d at 1355; USSG § 3B1.1, comment. (n.4).  The government must prove the existence of a leadership role by a preponderance of the evidence. United States v. Yates, 990 F.2d 1179, 1182 (11th Cir. 1993) (per curiam).

In making this determination, the district court may rely on hearsay, provided that the information is reliable.  United States v. Gordon, 231 F.3d 750, 759 (11th Cir. 2000).  So long as the hearsay statements are consistent with other evidence of the defendant's role in the conspiracy, the district court commits no clear error in considering them.  See id. at 760.  In Gordon, for example, we held that hearsay statements made by codefendants were reliable because the defendant could have discredited their statements by calling them as witnesses at sentencing. Id.  More important, the co-defendants' statements were consistent with each other and the defendant's role and conduct in the offense.  Id.

Against this legal backdrop, the district court did not err by relying on Alexander's statements to Agent Morelli to support a role enhancement under § 3B1.1(c).  To the contrary, Alexander's statements were reliable because they

6

were corroborated by other evidence in the record.  For example, the district court heard evidence that Pringle had previously participated in a similar scheme to use fraudulent medical providers to bill the OWC.  Pringle also had intimate knowledge of the OWC's reimbursement system because he had been previously employed by Affiliated Computer Systems, Inc., which served as OWC's third-party billing administrator.  Agent Torelli also testified that Alexander was not the only one who Pringle attempted to recruit into the conspiracy.  Indeed, Pringle had also asked at least two other people, including Pringle's half-brother, to open accounts where money from the conspiracy could be deposited.  This evidence was consistent with Alexander's statements that the scheme was wholly Pringle's idea, and Pringle recruited him to participate in it.

Beyond that, the government also presented evidence that Pringle managed the bills that were sent to the OWC and controlled the various accounts where money was deposited.  Pringle's phone records contained hundreds of phone calls to an OWC toll-free number for medical providers to check on the status of their claims.  Agent Torelli also testified that the IP addresses and e-mail addresses used to open the vast majority of the fraudulent electronic billing accounts were linked to Pringle and his home address.  This evidence is consistent with Alexander's statements that he had no role in sending billing requests to the OWC.  Rather, Pringle would order Alexander to go to the bank after funds were deposited and

7

tell him how much money to withdraw.  Given the consistency between Alexander's statements and the other evidence in the record, the district court did not err by relying on hearsay evidence to find that Pringle was a leader or organizer of the conspiracy.  Further, the district court did not clearly err by finding that the government had proven Pringle's leadership role by a preponderance of the evidence.

## II.

Pringle next argues that his sentence was procedurally unreasonable because the district court failed to consider evidence of his post-sentencing rehabilitation at his resentencing.  We cannot agree.  When a person is being resentenced, a court "may consider evidence of a defendant's rehabilitation since his prior sentencing." Pepper v. United States, ___ U.S. ___, ___, 131 S. Ct. 1229, 1241 (2011) (emphasis added).  To say that a district court may consider post-sentencing rehabilitation, however, is quite different from saying that a district court must consider such evidence in every case.  Because the district court has no such obligation under our precedent, it did not err by failing to explicitly refer to Pringle's post-sentencing rehabilitation when it imposed its sentence.[1]

---

[1] Pringle also appeals the district court's revocation of supervised release relating to his 2005 conviction for embezzlement and his 2006 conviction for bank fraud.  See Nos. 13-15055, 13-15056.  His brief, however, does not address either of these judgments.  Therefore, he has abandoned any argument that the revocation of his supervised release relating to these convictions was improper.  See United States v. Woods, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012) (per curiam).

**AFFIRMED.**